■ KATHLEEN SAJKOWSKI et al., Appellants, v YOUNG MEN'S CHRISTIAN ASSOCIATION OF GREATER NEW YORK, Respondent. [702 NYS2d 66] —Order, Supreme Court, New York County (Lorraine Miller, J.), entered July 20, 1998, which granted defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

The Young Men's Christian Association of Greater New York (YMCA) sponsored a "Wellness for Life" weekend program for adults who wished to engage in exercise and outdoor activities. Among the activities that were offered at the program was an obstacle course that included an event called the Nitro Crossing. This event involved nothing more than swinging from a rope. The rope dangled just about 1¹/₂ feet from the ground in the center of an imaginary pit that was actually flat, bare dirt. Those who chose to participate in the Nitro Crossing would start out by standing on a log that was lying at ground level. Then, holding on to the rope, they would swing approximately five to seven feet to another log that was also lying at ground level.

Plaintiff, Kathleen Sajkowski, an attendee at the weekend program, stood in line with several other participants and waited for her turn to swing on the rope. While she was waiting, she observed that several participants lost their grip and fell while swinging. When her turn came, she grasped the rope and began to swing. Approximately at the midway point of the imaginary pit, plaintiff lost her grip and fell, injuring her ankle. Plaintiff, alleging, *inter alia*, that defendant YMCA was negligent in failing to place shock absorbing material such as wood chips below the Nitro Crossing, commenced this action. No claim was made that the rope broke or was otherwise defective. Thereafter, defendant moved for summary judgment dismissing the complaint, asserting that plaintiff assumed the risk of participating in this activity. We conclude that the assumption of risk doctrine is applicable to plaintiff's injury.

In *Morgan v State of New York* (90 NY2d 471, 484), the Court of Appeals reaffirmed the principle that, "by engaging in a

sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation." This encompasses those risks that are associated with the construction of the playing field and any open and obvious defects on it (*Maddox v City of New York*, 66 NY2d 270, 277). Thus, if the risks of an activity are fully comprehended or perfectly obvious, one who participates in the activity is deemed to have consented to the risks (*Morgan v State of New York, supra; see also, Turcotte v Fell*, 68 NY2d 432, 439). Furthermore, where the risk is open and obvious, the mere fact that a defendant could have provided safer conditions is irrelevant (*Simoneau v State of New York*, 248 AD2d 865).

In considering plaintiff's injury, it is apparent that the risk of falling while swinging from a rope is inherent in participation in such an activity (*cf., Hofflich v Mendell*, 235 AD2d 784; *compare, Roska v Town of Cheektowaga*, 251 AD2d 984). It is also incontrovertible that the risks involved were not concealed and that plaintiff fully comprehended them since she had seen several other participants fall just moments earlier. Moreover, to the extent that the Nitro Crossing failed to have shock absorbing material beneath it, this was nothing more than an open and obvious condition of the playing surface, which, as noted, is not actionable (*Maddox v City of New York, supra; see also, Sheridan v City of New York*, 261 AD2d 528; *Paone v County of Suffolk*, 251 AD2d 563; *Brown v City of New York*, 251 AD2d 361; *compare, Warren v Town of Hempstead*, 246 AD2d 536 [defect concealed]; *Cronson v Town of N. Hempstead*, 245 AD2d 331).

Plaintiff attempts to avoid the foregoing analysis by establishing that the Nitro Crossing was constructed or operated in violation of prevailing industry standards. Specifically, it is alleged that shock absorbing material beneath the Nitro Crossing was required, as well as proper training for plaintiff with regard to her participation in the activity. These violations, it is asserted, exposed plaintiff to unreasonably enhanced risks, which she cannot be deemed to have assumed (*see, Morgan v State of New York, supra,* at 485; *see also, Greenburg v Peekskill City School Dist.*, 255 AD2d 487; *Clark v State of New York*, 245 AD2d 413; *Stackwick v Young Men's Christian Assn.*, 242 AD2d 878). In seeking to demonstrate such violations, plaintiff submitted expert evidence that analogized the Nitro Crossing to a gymnastics event and pointed to the requirements for construction of playgrounds built for children under 12 years of age.

What becomes apparent is that the comparison of the Nitro Crossing to a gymnastics event is incongruous.* Simply stated, plaintiff was not dismounting from uneven bars, or doing a tumbling routine during a floor exercise—activities completely different in degree, complexity, and danger from the activity at issue here. Nor was she engaged in an activity that required any specialized kind of training, instruction, or skill. She was only swinging from a rope with her body suspended just barely off the ground. The instructions for such an activity are simple and straightforward—hold the rope and swing. Similarly incongruous was plaintiff's reliance on standards for the proper construction of playgrounds built for children under 12 years of age. The Nitro Crossing, after all, was not part of a children's playground.

We also note that the balance of the expert evidence failed to demonstrate that defendant violated any prevailing standards in constructing the Nitro Crossing (*see, Simoneau v State of New York, supra; cf., Greenburg v Peekskill City School Dist., supra; Clark v State of New York, supra; Stackwick v Young Men's Christian Assn., supra*).

In view of the foregoing, Supreme Court properly granted defendant's motion and dismissed the complaint. Concur—Nardelli, J. P., Ellerin, Lerner, Andrias and Friedman, JJ.

---

* For the same reasons plaintiff's claim that defendant should have provided a spotter is without merit. Moreover, since plaintiff immediately fell to the ground when she lost her grip on the rope, the presence of a spotter would not have prevented this accident.